UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ANDRE A., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | Case No. C19-1662-MLP <br><br> ORDER |

## I.     INTRODUCTION

Plaintiff seeks review of the denial of his application for Supplemental Security Income Benefits. Plaintiff contends the administrative law judge ("ALJ") erred in assessing the medical opinion evidence. (Dkt. # 10 at 1.) As discussed below, the Court AFFIRMS the Commissioner's final decision and DISMISSES the case with prejudice.

## II.     BACKGROUND

Plaintiff was born in 1972, has a GED, and has no past relevant work history. AR at 18, 22. Plaintiff was last gainfully employed in 1994. *Id.* at 257-59.

On August 8, 2016, Plaintiff applied for benefits, alleging disability as of January 2, 2000. AR at 13. Plaintiff's applications were denied initially on November 15, 2016, and on reconsideration on January 11, 2017, and Plaintiff requested a hearing. *Id.* After the ALJ

ORDER - 1

1  conducted a hearing on May 18, 2018, the ALJ issued a decision finding Plaintiff not disabled.

2  *Id.* at 14.

3       Utilizing the five-step disability evaluation process,[1] the ALJ found:

4       Step one: Plaintiff has not engaged in substantial gainful activity since August 8, 2016 (20 C.F.R. 416.971 *et seq.*).

5

     Step two: Plaintiff has the following severe impairments: degenerative joint disease of the bilateral knees, right shoulder impingement, depression, post-traumatic stress disorder (PTSD), and substance abuse (20 C.F.R. § 416.920(c)).

     Step three: These impairments do not meet or equal the requirements of a listed impairment.[2]

     Residual Functional Capacity ("RFC"): Plaintiff can perform light work as defined in 20 C.F.R. 416.967(b) except he can frequently crawl. He has no limitations in his ability to balance and stoop. He can occasionally climb ramps, stairs, ladders, ropes, and scaffolds. He can occasional kneel and crouch. He should avoid concentrated exposures to extremes of cold and wetness. He should avoid concentrated exposure to hazards. He can occasionally reach overhead with his right, upper extremity. He can frequently reach in all other directions. He is limited to simple, routine, repetitive tasks. He can have only moderate noise level. He can have occasional interaction with the general public but not as part of the job tasks. He may be off task 5 to 10 percent of the workday.

     Step four: Plaintiff does not have past relevant work history.

     Step five: As there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, Plaintiff is not disabled.

AR at 15-22.

     As the Appeals Council denied Plaintiff's request for review, the ALJ's decision is the Commissioner's final decision. AR at 1-3. Plaintiff appealed the final decision of the Commissioner to this Court. (Dkt. # 4.)

---

[1] 20 C.F.R. §§ 404.1520, 416.920.
[2] 20 C.F.R. Part 404, Subpart P. Appendix 1.

ORDER - 2

### III.  LEGAL STANDARDS

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). As a general principle, an ALJ's error may be deemed harmless where it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (cited sources omitted). The Court looks to "the record as a whole to determine whether the error alters the outcome of the case." *Id*.

"Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

### IV.  DISCUSSION

**A.   The ALJ Did Not Err in Evaluating the Medical Opinion Evidence**

As a matter of law, more weight is given to a treating physician's opinion than to that of a non-treating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes*, 881 F.2d at 751; *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). A treating physician's opinion, however,

ORDER - 3

is not necessarily conclusive as to either a physical condition or the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted. *Magallanes*, 881 F.2d at 751. If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1988). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751). The ALJ must do more than merely state his/her conclusions. "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id*. (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). Such conclusions must at all times be supported by substantial evidence. *Reddick*, 157 F.3d at 725.

The opinions of examining physicians are to be given more weight than non-examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Like treating physicians, the uncontradicted opinions of examining physicians may not be rejected without clear and convincing evidence. *Id.* An ALJ may reject the controverted opinions of an examining physician only by providing specific and legitimate reasons that are supported by the record. *Bayliss,* 427 F.3d at 1216.

   *1.*  *Rebecca Speckman, M.D.*

Plaintiff first argues the ALJ failed to properly evaluate the opinion of Dr. Rebecca Speckman ("Dr. Speckman"), the State's consultative physical examiner, by failing to provide specific and legitimate explanation for limiting the weight assigned to her opinion and by not including in Plaintiff's RFC all of Dr. Speckman's limitations. (Dkt. # 10 at 4-8.) Plaintiff further

1  argues the hypothetical question posed to the vocational expert was erroneous because it did not

2  reflect all of Plaintiff's limitations opined by Dr. Speckman. (*Id.* at 6-8.)

3  Dr. Speckman performed Plaintiff's State consultative physical exam in November 2016.

4  AR at 20, 642-46. Dr. Speckman's physical evaluation noted that Plaintiff had normal range of

5  motion, strength, and motor function in all his extremities, except for his right shoulder. *Id.* at

6  644. Dr. Speckman observed that Plaintiff's right shoulder abduction and forward flexion were

7  abnormal and that his right shoulder range of motion was limited. *Id.* In assessing Plaintiff's

8  manipulative ability, Dr. Speckman's evaluation noted that Plaintiff sat comfortably during the

9  exam, Plaintiff was able to rise from the chair and get off the exam table without difficulty,

10 Plaintiff tied his shoes without assistance, Plaintiff could make a full fist with each hand,

11 Plaintiff could touch his thumb to the tip of each finger, and Plaintiff was able to pick up a coin,

12 manipulate his clothing, and turn a doorknob all without difficulty. *Id.* Dr. Speckman's

13 evaluation additionally found Plaintiff had no difficulties with his grip. *Id.* Based on her physical

14 evaluation, Dr. Speckman concluded: (1) Plaintiff could stand and walk for less than four hours a

15 day; (2) Plaintiff could sit for "at least" four hours, but would "do best if he could alternate

16 sitting and standing" on an every 30-35 minute basis; and (3) Plaintiff could only occasionally

17 reach, handle, finger, and feel with his right upper extremity. *Id.* at 20, 645-46. Dr. Speckman

18 additionally recommended an x-ray examination of Plaintiff's right shoulder "for further

19 evaluation of possible [degenerative joint disease.]"[3] *Id.* at 645.

---

[3] In arguing that that the ALJ erred in assessing Dr. Speckman's opinion, Plaintiff briefly raises that Dr. Speckman's statement concerning further x-ray evaluation calls for further development of the record. (Dkt. # 10 at 5.) An ALJ has an independent "duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996) (quoting *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983)); *see also* 20 C.F.R. § 404.1512(b). The ALJ's duty to develop the record "is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001). Here,

ORDER - 5

1    In his decision, the ALJ noted that he gave little weight to Dr. Speckman's conclusions
2 because the standing and walking limitations opined were inconsistent with Plaintiff's
3 performance on his physical exam. AR at 21. The ALJ noted Plaintiff's physical exam indicated
4 an antalgic gait and pain with squatting, but also that Plaintiff had normal range of motion and
5 strength in his lower extremities. *Id.* The ALJ further noted he discounted Dr. Speckman's
6 conclusions because the manipulative limitations opined were inconsistent with Plaintiff's ability
7 to perform manipulative tasks during her exam without difficulty. *Id.* In determining Plaintiff's
8 RFC, the ALJ concluded Plaintiff could perform work at the light exertional level. *Id.* at 17.

9    Dr. Speckman's opinion conflicted with the opinion of Dr. Howard Platter. AR at 20,
10 124-26. Dr. Platter opined Plaintiff could sit for six hours, stand and walk for six hours, and
11 could reach overhead with his right arm occasionally. *Id.* at 124-26. Dr. Platter did not assess any
12 manipulative limitations. *Id.* at 125. Because there are conflicting opinions concerning Plaintiff's
13 physical limitations, the ALJ could only discount Dr. Speckman's opinion for specific and
14 legitimate reasons. *See Bayliss*, 427 F.3d at 1216.

15    Here, the ALJ reasonably rejected Dr. Speckman's opinion because of the internal
16 inconsistencies between her opinion and the physical exam findings. Although Plaintiff disputes
17 whether the physical examination findings relied upon by the ALJ contradicted Dr. Speckman's
18 opinion, it is clear the findings are reasonably inconsistent with the limitations opined by Dr.
19 Speckman. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (not improper to
20 reject an opinion presenting inconsistencies between the opinion and the medical record). While
21 Dr. Speckman opined Plaintiff could only stand and walk for less than four hours a day, sit for

---

23 the ALJ's duty to develop the record was not triggered because the record before the ALJ was neither ambiguous nor inadequate to allow for proper evaluation of Plaintiff's right shoulder ailment to determine Plaintiff's disability status. *See Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001).

"at least" four hours, and could only occasionally reach, handle, finger, and feel with his right upper extremity, her physical findings demonstrated Plaintiff had normal range of motion and strength in his lower extremities and no difficulty performing manipulative tasks on exam without difficulty. AR at 644. Therefore, the ALJ did not err in discounting Dr. Speckman's opinion because he provided specific and legitimate reasons for discounting her opinion. *See Morgan v. Comm'r of Social Sec. Admin.*, 169 F.3d 595, 603 (9th Cir. 1999) (ALJ appropriately considers internal inconsistencies within and between physicians' reports); *Bayliss*, 427 F.3d at 1216 (rejecting physician's opinion due to discrepancy or contradiction between opinion and the physician's own notes or observations is "a permissible determination within the ALJ's province").

An ALJ does not err by excluding limitations from properly discounted medical evidence or subjective complaints that were properly found unreliable. *Bayliss*, 427 F.3d at 1217; *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004). Because substantial evidence supports the ALJ's assessment of Dr. Speckman's opinion, the Court finds no error in the assessed RFC or the corresponding hypothetical to the vocational expert. Accordingly, because the ALJ provided specific and legitimate reasons supported by the record to discount Dr. Speckman's opinion, the Court affirms the ALJ's assessment of Dr. Speckman's opinion.

      2.  *Geordie Knapp, Ph.D.*

Next, Plaintiff argues the ALJ failed to properly evaluate the opinion of Dr. Geordie Knapp ("Dr. Knapp"), the State's clinical psychologist, by failing to provide specific and legitimate reasons for limiting the weight assigned to his opinion. (Dkt. # 10 at 8-13.) Plaintiff argues more weight should have been assessed because Dr. Knapp's level of explanation exceeded that of Dr. Matthew Comrie ("Dr. Comrie") and Dr. Jan Lewis ("Dr. Lewis"), who the

ALJ credited, and that the ALJ omitted various aspects of Dr. Knapp's record in evaluating his opinion. (*Id.* at 10-11.) Because Dr. Knapp's conclusions conflicted with the opinions of Dr. Comrie and Dr. Lewis, who both found Plaintiff could complete a normal workday and work week when performing routine work (AR at 20, 109-11, 126-28), the ALJ could only discount Dr. Knapp's opinion for specific and legitimate reasons. *See Bayliss*, 427 F.3d at 1216.

Dr. Knapp performed a State psychological evaluation of Plaintiff on November 1, 2016. AR at 636-41. In his evaluation, Dr. Knapp concluded Plaintiff met the diagnostic criteria for major depressive disorder (severe), posttraumatic stress disorder, and unspecified neurocognitive disorder. *Id.* at 637. Dr. Knapp opined Plaintiff had severe limitation in his ability to perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances without special supervision, and complete a normal workday and work week without interruptions from psychologically based symptoms. *Id.* at 638. Dr. Knapp opined Plaintiff would have marked limitations in his ability to ask simple questions or request assistance and communicate and perform effectively in a work setting. *Id.* In his mental status examination, Dr. Knapp noted Plaintiff's mood was anxious and depressed, his affect flat, and his memory, fund of knowledge, concentration, abstract thought, and insight and judgment were not within normal limits. *Id.* at 639.

The ALJ gave little weight to Dr. Knapp's opinion because the ALJ determined his opinion failed to provide significant explanation for the limitations opined. AR at 21. The ALJ stated that Dr. Knapp's evaluation that Plaintiff was unable to care for himself was undermined by Plaintiff's ability to navigate the difficulties of being homeless. *Id.* The ALJ specifically noted Plaintiff's ability to function while remaining homeless demonstrated a high level of resilience

and skill for caring for himself and that Plaintiff's ability to care for his two young children, despite his impairments, further undermined the limitations opined by Dr. Knapp. *Id.*

Here, the ALJ could reasonably discount Dr. Knapp's opinion due to a lack of objective findings showing the severity of his opined limitations. *Bayliss*, 427 F.3d at 1216. An ALJ is not required to take medical opinions at face value and may consider the quality of the explanation when determining how much weight to give the opinion. 20 C.F.R. § 404.1527(c)(3); *Orn*, 495 F.3d at 631. Despite Plaintiff's argument that Dr. Knapp's opinion was supported by various aspects of his interview and exam, Dr. Knapp failed to specifically elaborate on the bases for why Plaintiff would have the marked and severe limitations opined. AR at 638. Dr. Knapp noted plaintiff's limitations in checkbox form without further explanation. *Id*. at 21, 638. It is difficult to discern Dr. Knapp's rationale for assessing the marked limitations opined given his description that Plaintiff "[was] pleasant and cooperative, took the evaluation seriously, gave considered answers and did his best on tasks presented." *Id.* at 639. Therefore, the ALJ did not err in discounting his opinion. *See Molina*, 674 F.3d at 1111 (quoting *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996)) ("The ALJ may permissibly reject check-off reports that do not contain any explanation of the bases of their conclusions.").

The ALJ reasonably discounted Dr. Knapp's opinion because his evaluation conflicted with Plaintiff's reported activities. AR at 21. A conflict with other evidence in the record is a valid basis to discount an opinion. 20 C.F.R. § 416.927(c)(4); *see Morgan*, 169 F.3d at 601-02 (affirming conflicts between a psychologist's opinion and the claimant's activities). Dr. Knapp opined Plaintiff would have marked problems requesting assistance, communicating, and would have severe problems being punctual and completing a normal workday. AR at 638. However, Plaintiff self-reported that he spent his time getting "gas money, attending appointments, going

to food banks and helping his mother with her errands." *Id.* at 21, 636. Though Plaintiff argues the ALJ omitted that Plaintiff also indicated he spent most of his day in the car trying to sleep, the ALJ was free to disregard this statement because it conflicted with his reported activities. *See Anderson v. Sullivan*, 914 F.2d 1121, 1124 (9th Cir. 1990) ("ALJ must be free to disregard self-serving statements that cannot be verified, and the ALJ's assessment of credibility must be given great weight.").

Finally, the ALJ is entitled to draw reasonable inferences logically flowing from the record. *Tommasetti*, 533 F.3d at 1040 (citing *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)). The ALJ reasonably concluded Plaintiff was capable of a much higher degree of functioning than opined because of his ability to navigate the difficulties of homelessness and his childcare issues given his impairments. *See Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (affirming an ALJ's rejection of a treating physician's opinion that was inconsistent with the claimant's level of activity). Plaintiff's challenges to the ALJ's assessment of his activities merely seeks an alternative interpretation of the record, and therefore, the ALJ's interpretation is entitled deference. *Molina*, 674 F.3d at 1111.

Because the ALJ provided specific and legitimate reasons supported by the record to discount Dr. Knapp's opinion, the Court affirms the ALJ's assessment of his opinion.

### 3. David Widlan, Ph.D.

Plaintiff argues the ALJ failed to properly evaluate the opinion of Dr. David Widlan ("Dr. Widlan"), the State's clinical psychologist, by failing to provide specific and legitimate reasons for limiting the weight assigned to his opinion. (Dkt. # 10 at 13-17.) Plaintiff argues more weight should have been assessed due to its consistency with Dr. Knapp's opinion. (*Id.* at 13, 17.) Because Dr. Widlan's conclusions conflicted with the opinions of Dr. Comrie and Dr. Lewis

(AR at 20, 109-11, 126-28), the ALJ could only discount Dr. Widlan's opinion for specific and legitimate reasons. *See Bayliss*, 427 F.3d at 1216.

Dr. Widlan conducted a psychological/psychiatric evaluation of Plaintiff in August 2017. AR at 686-94. Dr. Widlan ultimately concluded Plaintiff had several marked and severe limitations, including diagnostic criteria for major depressive disorder (severe) with psychotic features, posttraumatic stress disorder, and a cognitive disorder. *Id.* at 687-88. Dr. Widlan opined in his evaluation that Plaintiff: (1) was limited in his ability to understand, remember, and persist in tasks by following short and simple instructions; (2) had difficulty learning new tasks; (3) was limited in his ability to make simple work-related decisions, be aware of normal hazards, and take appropriate precautions; and (4) had difficulty asking simple questions or requesting assistance. *Id.* at 688.

In Plaintiff's mental status examination, Dr. Widlan noted Plaintiff presented with blunted affect, marked psychomotor retardation, depressed mood and placed in the non-malingering range. AR at 689. Dr. Widlan observed Plaintiff's perception, memory, knowledge, concentration, abstract thought, insight, and judgment were not within normal limits. *Id.* at 690. In enumerating the mental health symptoms affecting Plaintiff's ability to work, Dr. Widlan listed Plaintiff's lack of energy, motivation, anhedonia, hopelessness, poor memory and concentration, deficits in social relatedness, and nightmares/flashbacks as severe. *Id.* at 687.

The ALJ afforded little weight to Dr. Widlan's opinion because Dr. Widlan did not review any records prior to rendering his opinion. AR at 21. The ALJ also noted Plaintiff's counseling notes demonstrated Plaintiff had significant improvement with his mental health with medication and that he primarily complained of situational stressors related to his homelessness and stress over caring for his two children. *Id.* The ALJ concluded Plaintiff's mental status

evaluations in the record only demonstrated slight mental impairment and did not support the limitations noted by Dr. Widlan. *Id.*

Here, the ALJ provided multiple specific and legitimate reasons in the record for discounting Dr. Widlan's opinion. First, the ALJ reasonably discounted Dr. Widlan's opinion because he did not review any records prior to reaching his opinion. Lack of familiarity with the record is a valid consideration for discounting a medical opinion. *See* 20 C.F.R. §§ 404.1527(c)(6), 416.927(c)(6) (explaining that "the extent to which a medical source is familiar with the other information in your case record" is a relevant factor that will be considered in weighing a medical opinion). Furthermore, as noted by the ALJ, Plaintiff's counseling records demonstrate Plaintiff reported improvement of his mental health with medication and treatment. AR at 19, 668, 690, 710, 721-25. In December 2016, Plaintiff reported to his treatment providers that he was sleeping better, which had reduced his anxiety and depression symptoms. *Id.* at 19, 668. In March 2017, Plaintiff reported he was still sleeping better and that his mood was more stable over the past few months than it had been in years. *Id.* at 19, 724. At that appointment, treatment provider Dr. Timothy Forslund concluded Plaintiff's mental health presented as stable. *Id.* at 19, 725. In May 2017, Plaintiff was again reported as stable by his treatment providers. *Id.* at 19, 723. In July 2017, Plaintiff voiced continued improvement with his mental health and that he didn't "get as agitated as I used to." *Id.* at 19, 721. In March 2018, Plaintiff continued to report improvement in his mood, anxiety, and sleep and that he was satisfied with his medication. *Id.* at 19, 710. Consequently, Plaintiff has not demonstrated the ALJ erred in finding Plaintiff's symptoms improved with treatment and discounting his allegation of disability on that basis. *See Wellington v. Berryhill*, 878 F.3d 867,

876 (9th Cir. 2017) ("[E]vidence of medical treatment successfully relieving symptoms can undermine a claim of disability.").

Next, the ALJ reasonably discounted Dr. Widlan's opinion regarding Plaintiff's mental limitations because there was substantial evidence in the record that Plaintiff primarily complained of situational stressors. Plaintiff's counseling records indicate that Plaintiff was: (1) dealing with panic attacks following the stress of having a new baby in addition to a toddler; (2) dealing with lack of sleep; and (3) suffered increased anxiety from single parenting, seeking housing assistance, and falling off a friend's roof, which limited his activity and allegedly caused more depression. AR at 18-19, 599, 605, 711, 725. However, Social Security disability determinations are based on medically determinable impairments, not situational stressors. *See* 20 C.F.R. § 404.1505 (disability is inability to work "by reason of any medically determinable physical or mental impairment"); *see also Chesler v. Colvin*, 649 F.App'x 631, 632 (9th Cir. 2016) (symptom testimony properly rejected where claimant's mental health symptoms were situational). Accordingly, there was substantial evidence in the record for the ALJ to discount Dr. Widlan's opined limitations on this basis.

Finally, the ALJ reasonably discounted Dr. Widlan's opinion regarding Plaintiff's mental health in light of the contrary opinions of the other medical providers that were submitted in the record. An ALJ may discredit the opinions of a physician that are unsupported by objective medical findings. *Batson,* 359 F.3d at 1195 (that opinions were "contradicted by other statements and assessments of [claimant's] medical conditions" and "conflict[ed] with the results of a consultative medical evaluation" were specific and legitimate reasons to discount the opinions). Despite Dr. Widlan's observations to the contrary, Plaintiff's memory was consistently found normal at other mental status exams and Plaintiff's other mental status exams routinely

documented fair judgment and insight, normal concentration and attention, and intact fund of knowledge. AR at 19, 599, 710, 721; *see also id.* at 601, 603, 605, 607, 609, 617, 696, 713, 716, 719, 724, 726. Furthermore, the ALJ correctly noted Dr. Widlan's opinion conflicted with Plaintiff's mental health evidence both before and after Dr. Widlan's opinion was rendered in August 2017. *Id.* at 19, 21. In July 2017, Plaintiff displayed normal thought process, thought content, perception, memory, attention, fund of knowledge, and his judgment and insight were assessed as fair. *Id.* at 719, 721. All the same findings were observed in October 2017. *Id.* at 716. It is the ALJ's responsibility to resolve conflicts in medical evidence, and therefore, the Court declines to overturn the ALJ's findings based on Plaintiff's alternative interpretation of the evidence. *Andrews*, 53 F.3d at 1039.

The ALJ provided specific and legitimate reasons, supported by substantial evidence, for discounting Dr. Widlan's opinion. To the extent the ALJ erred in discounting Dr. Widlan's opinion because he found Plaintiff's mental impairments focused on his situational stressors, any error is harmless because of the additional specific and legitimate reasons, supported by substantial evidence, the ALJ provided. *Carmickle v. Comm'r of Social Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008).

## V.  CONCLUSION

For the foregoing reasons, the Commissioner's final decision is AFFIRMED, and this case is DISMISSED with prejudice.

Dated this 12th day of August, 2020.

MICHELLE L. PETERSON
United States Magistrate Judge